## SAGINAW LUMBER CO. *v.* WILKINSON.

1. MECHANICS' LIENS—WAIVER OF RIGHT TO LIEN.

   Lumber company's right to lien was not waived by agreement with owner to accept payment for materials when building loan was made where agreement was indefinite as to whether that was before or after 60 days after delivery of the last material (3 Comp. Laws 1929, § 13101).

2. SAME—WAIVER—PROOF.

   Waiver of right to mechanic's lien must be clear and unequivocal.

3. SAME—FINDING OF COURT.

   Evidence *held*, to support finding of court that lien claimant did not waive its right to claim lien.

4. SAME—TIME OF FILING.

   Claim of lien may be filed before money is actually due.

5. SAME—JURISDICTION OF EQUITY.

   Jurisdiction of equity in mechanics' lien foreclosures is not general but is limited by statute.

6. SAME—NATURE OF LIEN.

   Mechanics' liens are legal in their essential nature rather than equitable.

7. SAME—ESTOPPEL—PROOF.

   Estoppel in mechanics' lien foreclosure cases must be clearly proved, especially where interwoven with claim of waiver.

8. SAME—ESTOPPEL.

   Evidence *held*, insufficient to show estoppel of materialman to enforce lien.

9. SAME—REDEMPTION—APPEAL AND ERROR.

   Reasonable time to redeem from forthcoming foreclosure sale under mechanic's lien is granted where appeal was taken from decree of foreclosure before beginning of period set by court within which sale might be held (3 Comp. Laws 1929, § 13119).

Appeal from Saginaw; Martin (William H.), J. Submitted January 12, 1934. (Docket No. 2, Calendar No. 37,451.) Decided April 3, 1934. Rehearing denied June 4, 1934.

Bill by Saginaw Lumber Company, a corporation operating Kerry & Way Lumber & Manufacturing Company, against Z. Neal Wilkinson and others to foreclose a mechanic's lien. Decree for plaintiff. Defendants Krause appeal. Affirmed.

*Frank A. Picard,* for plaintiff.

*George C. Ryan,* for defendants Krause.

BUSHNELL, J. Defendant Wilkinson began the construction of a home and signed an undated agreement with Kerry & Way Lumber & Manufacturing Company, covering material to be delivered to the job and containing in part the following language:

"And said first party agrees to deliver as requested by second parties the material desired from the within estimates at the price agreed ($———) according to the following terms of sale: All bills to be paid when loan is secured from Building and Loan Association, less 5 per cent. discount. * * * Negotiating for loan with Peoples Building & Loan Association for $———."

First delivery of material was made July 23, 1930, and last delivery October 23, 1930. The bills amounted to a total of $663.69. Defendant Krause, who has been a carpenter, contractor and builder for 30 years, did the cement work in the basement, amounting to about $175, for which he was not paid, and was then informed by the owner that she could not finish the work because of lack of money. This situation resulted in a trade whereby Krause took over the property about December 12th, giving

Mrs. Wilkinson a vacant lot in exchange. Krause completed the house about May 1, 1931. Before this deal was closed, Krause claims he made an arrangement with plaintiff in which it agreed that no lien would be filed if he would buy from it the rough material needed to finish the job. He also claims he arranged with the building and loan company for a loan of $2,000 to be made when the job was completed, but this transaction was never consummated. Krause purchased from plaintiff material amounting to $173, which also went into the property, signing an undated agreement to which we shall refer.

On December 22, 1930, plaintiff filed a statement of account and claim of lien and served Krause, who immediately complained to it of its failure to carry out the claimed agreement. Failing to arrive at a satisfactory adjustment, a bill of foreclosure was filed and the court decreed a foreclosure with a short period of redemption.

Defendants Krause, who alone appeal, claim the right of lien was waived by the first-mentioned agreement between plaintiff and defendant Wilkinson, in that bills were to be paid when the loan was secured, and also show their own agreement, covering material subsequently delivered and containing the phrase, ''To be paid on completion of dwelling Z. Neal Wilkinson estimate,'' in substantiation of such claim.

Neither written agreement is sufficiently definite to justify a claim of waiver. The first is indefinite as to time of payment, and the language is not explained by the testimony of the parties. It can be assumed that the parties intended that the loan would be secured within 60 days after the delivery of the last material, or it can also be assumed that it was not to be secured until long after that time

(3 Comp. Laws 1929, § 13101). The time of payment depends upon the occurrence of an event in the indefinite future, and it is at least doubtful that the parties intended that this event might be postponed to a time after the right to file a lien had passed. If such was intended, the purchaser should have insisted upon more definite language. We are unwilling to hold that the agreement is sufficient of itself to constitute a waiver of plaintiff's statutory protection. Such a decision would unsettle the whole mechanics' lien structure. Litigants cannot expect the courts to rewrite their poorly drawn agreements, nor will we attempt to guess at meanings not definitely expressed.

Appellants claim that plaintiff also waived its right to a lien about December 2d or 3d. Krause testified as follows:

"Mr. Wenger told me that if I would take over the building, buy the place, they would refrain from putting on a lien, if I would buy the material from them to finish this building."

Wenger denied making any such offer, although Krause testified that Wenger later admitted the agreement in the presence of Way. Plaintiff called Way as a witness, and he testified in substance that he talked to Krause in the presence of Wenger and that Krause did not say that he had an agreement with Wenger "not to put on any lien." At best the record shows a claim and denial as to the waiver, and from it we are unable to solve the mystery as to how the completion of the house was to benefit the lumber company if it waived its lien and Krause did not assume the payment of the existing indebtedness.

Defendant's sworn answer says in part, "said defendant E. L. Krause agreed to pay the said bill

provided plaintiff would refrain from placing a lien thereon.'' This, says Krause, arose out of a telephone conversation with Wenger about December 15th. On the stand, he at first vigorously and repeatedly denied any intent to assume the Wilkinson liability, but eventually supported the statement made in his answer. The real truth is difficult to ascertain.

Mrs. Krause, who also signed the second agreement, testified on cross-examination, without objection from either party, that her husband told her he had seen Mr. Wenger and ''that they had agreed not to put a lien on that property until 60 days after the last of the lumber was delivered there.'' In the absence of further testimony, we cannot determine whether this conversation referred to the Wilkinson lumber or to past or future deliveries to Krause.

Before one entitled to a lien under the statute should be declared to have waived it, it ought clearly and unequivocally to appear that he has expressly waived it. *Marquette Lumber Co.* v. *Albee,* 196 Mich. 127. In that case, as here, the parties sharply contradicted each other as to the conversations out of which the waiver is claimed to have arisen. Plaintiff served a notice of intention to claim a lien shortly after the execution of the first written contract. While there may have been a change of intention on the part of plaintiff in the interval, we must reach our conclusions from the testimony of the parties and the language of the two written agreements. In the absence of clear and unequivocal proof on the part of the defendant, we are unwilling to disturb the trial court's findings that plaintiff did not waive its right to claim a lien either by written or parol agreement.

Was the claim of lien prematurely filed? There is nothing to prevent the filing of a claim of lien before the money is actually due. *Knowlton* v. *Gibbons,* 210 Mich. 547.

No doubt plaintiff was quite willing to look to Krause for its money, because when he took over the property it was in an unfinished condition and of little value, and Krause doubtless was willing to complete the house and pay the bills, thereby taking his chances on saving what he had in the property. Plaintiff perhaps encouraged defendant in his attempts, but without going so far as to waive its lien. Defendant Krause, on the other hand, led plaintiff to believe he would pay the Wilkinson bill without expressly assuming the obligation. Both parties negotiated but made no binding agreement.

If this were purely an equitable action, we might be able to infer from the record that plaintiff by its conduct had forfeited its right to equitable relief. The jurisdiction of equity in mechanics' liens foreclosures, however, is not general, but is limited by the statute. *Sharon* v. *Fee,* 203 Mich. 152. Such liens are legal in their essential nature rather than equitable. Pomeroy's Equity Jurisprudence (4th Ed.), § 1269.

Appellants further contend that plaintiff by its conduct is estopped from asserting its lien. Estoppel, like waiver, must be clearly shown to exist. It should not be lightly inferred in mechanics' lien cases, especially where it is interwoven with the claim of waiver. We cannot say from the record that defendant established that plaintiff was estopped to enforce its statutory right.

Neither Krause nor plaintiff can claim to be inexperienced in such matters. Plaintiff's material went into the property, thereby adding to its value, and, in spite of the apparent inconsistency of some

of its actions, it has the right to payment and to the enforcement of that payment by a lien upon the property. Krause assumed the risk of the transaction; had there been any profit, he would not have been required to share it with anyone.

The statute, 3 Comp. Laws 1929, § 13119, provides that unless otherwise directed by the court, a period of 15 months from the time of filing a bill for foreclosure be allowed for redemption. The bill was filed on May 22, 1931, and the court in its discretion gave defendant until March 10, 1933, to redeem. The appeal was taken prior to the beginning of the period set by the court within which the sale might be held. We feel that defendants Krause, who alone appeal, should be allowed a reasonable time to secure funds in order to redeem from the forthcoming foreclosure sale. See, *Rubenstein* v. *People's Lumber Co.*, 231 Mich. 674.

The decree below is affirmed, with costs to appellee, except that the defendants shall have 90 days in which to redeem from the foreclosure sale.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.