NORCROSS COMPANY v TURNER-FISHER ASSOCIATES

Docket No. 94200. Submitted October 6, 1987, at Grand Rapids. Decided December 9, 1987.

Turner-Fisher Associates acquired by land contract a certain piece of commercial property in Petoskey, Michigan. In October, 1981, Turner-Fisher granted to DG Investments an option to purchase the property. It was the intent of the parties that DG Investments would make renovations and improvements upon the building located on the property and the building would then be sold or leased as retail or office space. The option agreement provided for the payment of a monthly option fee and further provided that no alterations would be undertaken by DG Investments until it had made a $25,000 lump-sum payment. Shortly after DG Investments took possession of the property, it began making substantial improvements to the building even though it had not made the lump-sum payment. In March, 1983, Turner-Fisher entered into a second agreement with DG Investments in which Turner-Fisher acknowledged that the improvements that had been made to the building had been authorized and approved by Turner-Fisher and authorized and approved future alterations and improvements to the building. On June 1, 1983, Turner-Fisher notified DG Investments to pay all arrearages of the monthly option fees and of property taxes for which DG Investments was liable under the original option agreement or face termination of its option rights. On August 24, 1983, DG Investments filed for bankruptcy. Turner-Fisher moved in the bankruptcy court to prohibit DG Investments or its owner from making any further improvements on the building. An order to that effect was entered on February 9, 1984. On April 17, 1984, by stipulation of the parties, the stay order was lifted, the rights of DG

REFERENCES

Am Jur 2d, Agency §§ 372, 373.

Am Jur 2d, Bankruptcy § 241.

Am Jur 2d, Mechanics' Liens §§ 44-46.

Enforceability of mechanic's lien attached to leasehold estate against landlord's fee. 74 ALR3d 330.

Investments under the option agreement were terminated and the property was surrendered to Turner-Fisher.

In the meantime, various individuals and companies which had supplied materials or labor for the renovation of the subject property filed construction liens. On June 1, 1983, Norcross Company filed its lien for materials and labor supplied from December, 1982, to May, 1983. On the same date, Garry L. Ward filed his lien for materials and labor supplied from May, 1982, to April, 1984. On December 28, 1983, Richard Walker filed his lien for materials and labor supplied from March, 1983, to March, 1984. On April 17, 1984, Marter, Inc., filed its lien for materials and labor supplied in February and March, 1984. These suppliers and contractors brought an action in Emmet Circuit Court against Turner-Fisher to foreclose on their liens. Following a bench trial, the trial court, Richard M. Pajtas, J., found that the liens should attach to the realty as a whole because, on the basis of the acknowledgment executed by Turner-Fisher, an agency relationship existed between Turner-Fisher and DG Investments. The liens were foreclosed. Defendant appealed.

The Court of Appeals *held:*

1. The construction lien statute is remedial in nature and, by legislative mandate, is to be liberally construed. Judicial pronouncements to the contrary must yield to the legislative mandate.

2. A lessor's interest in a property may be reached in an action to foreclose construction liens where the lessee became the lessor's agent with authority to contract for improvements which will be a substantial benefit to the lessor. Such an agency relationship could properly be implied here from the acknowledgement agreement.

3. It was error for the trial court to permit foreclosure of any lien against Turner-Fisher's interest in the property which arose out of those services rendered after the order of the bankruptcy court which prohibited DG Investments from making any further improvements, since after entry of that order there could be no implied agency relationship which would act to bind Turner-Fisher.

Affirmed in part, reversed in part and remanded.

1. LIENS — CONSTRUCTION LIEN ACT — LEGISLATIVE INTENT — JUDICIAL CONSTRUCTION.

The Legislature directed that the provisions of the Construction Lien Act, because of its remedial nature, must be construed liberally to carry out its intended purpose of benefitting and

protecting subcontractors, materialmen and laborers; the legislative mandate must prevail over judicial pronouncements to the contrary (MCL 570.1302[1]; MSA 26.316[302][1]).

2. LIENS — CONSTRUCTION LIEN ACT — LANDLORD AND TENANT — PRINCIPAL AND AGENT — IMPROVEMENTS.

The Construction Lien Act allows a lien on property only to the extent of the interest of the owner, part owner or lessee with whom the claimant has contracted; the lessor's interest may be reached where the lessee becomes the lessor's agent with authority to contract for improvements which will be a substantial benefit to the lessor (MCL 570.1107; MSA 26.316[107]).

3. AGENCY — QUESTIONS OF FACT.

The existence and scope of an implied agency relationship are questions of fact for the trier of fact.

4. LIENS — CONSTRUCTION LIEN ACT — IMPLIED AGENCY — BANKRUPTCY.

A lessor who seeks an order from a bankruptcy court terminating the right of the bankrupt lessee to make any further improvements to the property acts to terminate any implied agency relationship between the lessor and lessee and thereby terminates the right of any contractor supplying work or material for such improvement after the order of the bankruptcy court to have a construction lien attach to the lessor's interest in the property (MCL 570.1107[3]; 26.316[107][3]).

*John F. Rohe,* for Norcross Company and Garry L. Ward.

*Burns & Spanos* (by *George D. Spanos*), for Richard G. Walker.

*Timothy B. Murphy,* for Marter, Inc.

*Bowerman & Droste, P.C.* (by *Gary L. Bowerman* and *Norman K. Droste*), for defendant.

Before: DANHOF, C.J., and CYNAR and J. E. MIES,* JJ.

PER CURIAM. Defendant, Turner-Fisher Associ-

* Circuit judge, sitting on the Court of Appeals by assignment.

ates, appeals as of right from a July 7, 1986, judgment which ordered the enforcement of the construction liens held by plaintiffs on certain real property owned by Turner-Fisher. We affirm in part and reverse in part.

In August, 1979, Richard H. Turner and William A. Fisher formed Turner-Fisher, a partnership for the purpose of acquiring and developing real estate. The subject property, located at 207-211 E. Mitchell Street, Petoskey, Michigan, was purchased in 1979 by Turner-Fisher on a land contract basis from the fee owners, Louise Dean and the Northern Auto Company. Turner-Fisher leased the property to Petoskey Ford Sales, Inc., on a month-to-month basis until approximately October, 1981, when the dealership closed its business.

Thereafter, on October 15, 1981, Turner-Fisher entered into a written option agreement with DG Investments, through its president and sole stockholder, Jeffrey DeGayner, for the sale of the property. The "whole purpose" of the option agreement was to make alterations, renovations and improvements to the building, which would then be sold or leased as retail or office space. The option agreement contained several provisions, of which two are especially important to this dispute:

> 17. Anything herein to the contrary notwithstanding, until such time as the Twenty-Five Thousand ($25,000.00) Dollar lump sum payment required by Paragraph 6 hereof has been made, no alterations, or detachments shall occur at the subject premises without the written authorization of Optionor (which shall be sufficient if given by either partner of Optionor). This provision shall not apply from and after the date of such lump sum payment.
>
> 18. Any alterations and/or improvements made at the subject premises shall at all times be free

from any type of mechanic's lien and any other type of lien and/or encumbrance. Optionee, and its sole shareholder, Jeffrey DeGayner, do hereby jointly and individually agree to hold Optionor free and harmless from payment of any such liens, including payment of any attorney fees and/or costs suffered by Optionor in order to remove and/ or to defend against same. In the event of termination of this Agreement, Optionee shall forthwith fully satisfy any outstanding charges pertaining to any improvements, alterations and/or detachments made at the subject premises during the continuation of this Agreement.

Shortly after DG Investments took possession of the property, it began making substantial improvements to the building even though the $25,000 lump-sum payment was not made as required by paragraph 17 of the option agreement. The following is a list of the various plaintiffs that supplied materials or labor to DG Investments and the amounts and dates said work was performed:

| Plaintiff: | Dates: | Amount ($): |
|---|---|---|
| Norcross Co. | 12/3/82—5/23/83 | 19,307.41 |
| Walker | 3/2/83—3/5/84 | 15,930.88 |
| Ward | 5/22/82—4/29/83 | 16,901.13 |
| Marter, Inc. | 2/29/84—3/2/84 | 3,312.94 |

The claim of the fifth plaintiff, Sager-Rand, Inc., doing business as Ballard's, was resolved prior to trial and dismissed by stipulation.

On March 31, 1983, Turner-Fisher entered into a second written agreement with DG Investments, labeled an "Acknowledgment," which confirmed the latter's exercise of its option rights. An important provision of the Acknowledgment provided

[t]hat the improvements and alterations recently made at the Petoskey Ford building have been

authorized and approved by TURNER-FISHER ASSOCI-
ATES. Future improvements and alterations are
hereby also approved and authorized provided that
(a) all of such improvements and alterations meet
the requirements of regulatory codes and that (2)
such improvements and alterations are done under
the supervision of a registered architect.

The Acknowledgment also waived the tax abate-
ment and the financing required contained in
Paragraph 13 of the original option agreement.
The purpose of the Acknowledgment was to assist
DG Investments in leasing a part of the property
to a savings and loan association.

Throughout most of the time that DG Invest-
ments was in possession of the property, it was in
arrears in making the option agreement payments
and in paying the property taxes. In the spring of
1983, Turner-Fisher took steps to terminate the
option agreement and remove DG Investments and
DeGayner from the property. A notice was sent on
June 1, 1983, telling DG Investments to pay all
arrearages by June 15, 1983, or its rights in the
property would be terminated.

On August 24, 1983, DG Investments filed for
Chapter 11 bankruptcy. Turner-Fisher thereafter
moved in bankruptcy court to prohibit DG Invest-
ments or DeGayner from making any further
improvements on the property. An order to that
effect was entered on February 9, 1984. Turner-
Fisher also sought an order allowing it to proceed
with terminating the rights of DG Investments to
the property. Pursuant to a stipulation between
the parties, on April 17, 1984, the bankruptcy stay
order was lifted and the rights of DG Investments
were terminated. That same day, the property was
surrendered to Turner-Fisher.

In the meantime, before and after the com-
mencement of the bankruptcy proceedings, the

various plaintiffs filed construction lien claims against DG Investments in accordance with the Michigan Construction Lien Act, MCL 570.1101 *et seq.;* MSA 26.316(101) *et seq.* The claims of Norcross Company and Garry Ward were filed on June 1, 1983. Richard Walker filed his lien claim on December 28, 1983. Marter, Inc., was the last to file, doing so on April 17, 1984 (the same day Turner-Fisher received the order lifting the bankruptcy stay). All of the plaintiffs notified Turner-Fisher of the filing of their claims.

On May 30, 1984, plaintiffs commenced the instant suit against Turner-Fisher to foreclose on their liens for the work and materials provided to DG Investments. The attorney for Turner-Fisher, on June 12, 1984, notified each of the plaintiffs of their right to assume the option agreement and subrogate themselves to the rights of DG Investments, as provided in § 107 of the Construction Lien Act, MCL 570.1107(4); MSA 26.316(107)(4). The plaintiffs refused defendant's offer.

As a result, a bench trial took place on April 29-30, 1986, in the Emmet Circuit Court. At the trial's conclusion, the judge advised all the parties that he would take the matter under advisement and render a decision at a later date. The court issued its written opinion on May 28, 1986. In it, the court found that the evidence produced at trial should be considered within the purview of the Construction Lien Act's function as a remedial statute to be liberally construed. In light of this principle, the court found that Turner-Fisher was liable to plaintiffs for the services and supplies they provided on the property because, in accordance with the Acknowledgment between Turner-Fisher and DG Investments, an implied agency was created which rendered the principal (Turner-Fisher) liable for the liens on the property. The

court concluded that the various plaintiffs had perfected construction liens and said liens reached the fee of the realty.

In accordance with its May 28, 1986, decision, on July 7, 1986, the court entered judgment allowing plaintiffs to foreclose on the amounts of their respective liens, plus interest. Plaintiffs were also awarded costs and reasonable attorney fees. From this judgment, Turner-Fisher now appeals.

Although Turner-Fisher raises eight issues, we have narrowed them to essentially three. First, whether error occurred in ruling that the Construction Lien Act must be liberally construed to determine whether plaintiffs are entitled to relief as construction lienholders. Second, if plaintiffs are deemed lienholders, do their liens attach to the fee title of the property, and not just to the improvements? Finally, did the lower court err in granting plaintiff Marter, Inc., a construction lien after Turner-Fisher had obtained a bankruptcy court order prohibiting any further improvements? We address each of these claims in the order described.

Turner-Fisher alleges that the Construction Lien Act should be liberally construed in determining the validity of a lien. However, it should be strictly interpreted in deciding what property interest the lien reaches. We disagree.

In determining that plaintiffs were entitled to construction liens, the trial court held:

> The Construction Lien Act is a remedial statute and specifically provides that it shall be liberally construed to secure the beneficial results, intents and purposes of the act. See Section 302(1).

Section 302(1), MCL 570.1302(1); MSA 26.316(302)(1), provides:

This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them.

The rules of statutory construction were concisely stated in *Latham v Wedeking,* 162 Mich App 9, 12; 412 NW2d 225 (1987):

(1) when a statute is unambiguous, further construction is to be avoided; (2) if an ambiguity exists, the intent of the Legislature must be given effect; (3) a construction which best accomplishes the statute's purpose is favored; (4) statutes are to be interpreted as a whole and construed so as to give effect to each provision; (5) specific words in a statute are given their ordinary meaning unless a different interpretation is indicated; and (6) respectful consideration is to be given to the construction of a statute used by those charged with its application.

In this case, the language of § 302(1) is clear and unambiguous. The statute explicitly indicates that the statute is remedial in nature and shall be liberally construed. Thus, the language of the statute supports the court's conclusion that the statute should receive a liberal interpretation.

Moreover, the case of *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977), reh den 400 Mich 1029 (1977), supports such a construction. In *Spartan Asphalt,* our Supreme Court, in construing the mechanics' lien statute, MCL 570.27; MSA 26.307[1]

---

[1] MCL 750.27; MSA 26.307 provided:

This act is hereby declared to be a remedial statute and to be

(predecessor to the construction lien act), held that earlier cases, which had employed strict construction of the statute, were wrongly decided because the Legislature clearly intended a liberal interpretation of the statute as indicated by the language in the statute.

Two cases decided after *Spartan Asphalt* applied the strict construction rule in determining whether a lien had attached. See *Renshaw v Samuels,* 117 Mich App 649; 324 NW2d 117 (1982), and *J & I Service Station, Inc v Wash Wagon of Michigan, Inc,* 120 Mich App 533; 327 NW2d 518 (1982). However, we believe that these two cases were wrongly decided since they relied on *Vorrath v Garrelts,* 35 Mich App 463; 192 NW2d 547 (1971), which was no longer good law since it was overruled in *Spartan Asphalt, supra.* Hence, the trial court's construction of § 302(1) was proper.

Turner-Fisher also argues that, because these plaintiffs contracted with DG Investments, their liens only attach to the improvements as provided by MCL 570.1107(3); MSA 26.316(107)(3), and not upon the underlying realty. Turner-Fisher further contends that no lien attached to the realty because it did not require the improvements nor assent thereto. We reject both of these positions.

MCL 570.1107(1); MSA 26.316(107)(1) provides that a claim of lien attaches to the interest of (1) the owner or lessee who contracted for the improvement; (2) the mortgaging owner who subordinated its interest to the mortgage for the improvement; or (3) the owner who has required the improvement. For purposes of the act, DG Investments is considered as a "lessee" and Turner-

construed liberally to secure the beneficial results, intents and purposes thereof; and a substantial compliance with its several provisions shall be sufficient for the validity of the lien or liens hereinbefore provided . . . .

Fisher the "owner" of the property. See MCL 570.1105(1) and (3); MSA 26.316(105)(1) and (3).

The construction lien, if found to exist under one of the foregoing three situations, attaches to the entire interest of the owner or lessee who contracted for the improvement, including any subsequently acquired legal or equitable interest. MCL 570.1107(2); MSA 26.316(107)(2). However, if the party contracting for the improvement did not have legal title in the property, the lien only attaches to the improvement. MCL 570.1107(3); MSA 26.316(107)(3). The act further protects lienholders in situations where a land contract vendee's or a lessee's rights are forfeited, surrendered, or otherwise terminated, by allowing the lien claimant to subrogate himself to the rights of the contracting vendee or lessee upon (1) providing a notice of furnishing and (2) performing the covenants of the land contract or lease within thirty days of receiving actual notice of the lost property interest. MCL 570.1107(4); MSA 26.316(107)(4).

Turner-Fisher's contention that, because plaintiffs failed to subrogate themselves to DG Investments' former claims, they lost their construction liens is without merit. The subrogation right is but one of several rights granted to lienholders. It is not the exclusive remedy under the act. The lien claimants are provided with additional rights under § 107(1). Thus, keeping in mind the liberal construction of the statute, we interpret the section of the act dealing with subrogation as being merely one type of right provided in the act. It is not the sole remedy available to lien claimants.

Turner-Fisher also alleges that these liens did not attach to the realty because it did not *require* DG Investments to make the improvements as part of the option agreement it signed with DG Investments. This argument is supported by the

language of the statute which states that a lien will not attach to the owner's interest unless the improvements are required by the owner. MCL 570.1107(1); MSA 26.316(107)(1). In addition, a lien will not attach if the owner merely authorizes the improvements but does not require them. See *Rowan & Blair Electric Co v Flushing Operating Corp,* 399 Mich 593, 602; 250 NW2d 481 (1977) (construing the mechanics' lien act).

In the instant case, the trial court recognized these provisions and ruled in favor of Turner-Fisher by stating that mere authorization to make these improvements would not be enough to permit these liens to attach to the realty. However, the court's finding that the liens did attach was based on MCL 570.1107(1); MSA 26.316(107)(1) in that these improvements were "contracted" for by the owner through the theory of implied agency. The lower court found that an implied agency existed between Turner-Fisher, as principal, and DG Investments, as agent, for the construction of the improvements.

In *Rowan & Blair Electric, supra,* p 600, the Supreme Court stated that mechanics' liens would reach the owner's interest if, in fact or in law, the lessee becomes the lessor's (owner's) agent with authority to contract for improvements which will be of substantial benefit to the lessor. The existence and scope of an agency relationship are questions of fact for the trier of fact. *Whitmore v Fabi,* 155 Mich App 333, 338; 399 NW2d 520 (1986). The question whether an implied agency relationship exists is also one of fact. *Trongo v Trongo,* 124 Mich App 432, 436; 335 NW2d 60 (1983), lv den 417 Mich 1100.32 (1983). An implied agency must "rest upon acts and conduct of the alleged agent known to and acquiesced in by the alleged principal prior to the incident at bar."

*Shinabarger v Phillips,* 370 Mich 135, 139; 121 NW2d 693 (1963). Findings of fact by a trial court will not be set aside on appeal unless clearly erroneous. MCR 2.613(C).

In this case, the court's finding that an implied agency existed between Turner-Fisher and DG Investments with respect to the improvements was not clearly erroneous. The improvements were made even though DG Investments had not paid the $25,000 amount as required by the option agreement. Additionally, Turner-Fisher continued to acquiesce in the improvements even though DG Investments was in arrears in making the monthly payments on the option agreement and paying the property taxes. Despite DG Investments' constant state of default, Turner-Fisher made no efforts to limit or cease the improvements being made on the property.

As a matter of fact, Turner-Fisher encouraged the improvements as evidenced by the execution of the Acknowledgment on March 31, 1983, which stated that all past improvements had been "authorized and approved." The Acknowledgment also provided that all future improvements would be authorized and approved if they satisfied certain building and regulatory codes. Thus, on these facts, not only did Turner-Fisher acquiesce to the improvements, it encouraged them. Therefore, Turner-Fisher has not established error.

Finally, Turner-Fisher claims that Marter, Inc., does not have a lien because it supplied labor and material after the bankruptcy court order prohibited further improvements. We agree.

The bankruptcy court order constituted an express intention of Turner-Fisher that it no longer condoned or encouraged further improvements. Hence, this order terminated the implied agency

between Turner-Fisher and DG Investments because an implied agency cannot exist contrary to the express intention of the alleged principal. *Flat Hots Co, Inc v Peschke Packing Co,* 301 Mich 331, 337; 3 NW2d 295 (1942).

However, this does not necessarily mean that Marter, Inc., is without any remedy. The act allows a lien to attach to the improvement itself even though the contracting lessee lost its interest in the property. MCL 570.1107(3); MSA 26.316(107)(3). Whether Marter, Inc., may assert a lien against their improvements depends on whether the liabilities of DG Investments and DeGayner were discharged in bankruptcy. The record is unclear on this issue. Thus, we remand to the trial court for a determination whether Marter, Inc., may assert a construction lien on the improvements. In all other respects, the trial court's decision is affirmed.

Affirmed in part, reversed in part and remanded for proceedings not inconsistent with this opinion. No costs, neither party prevailing in full. We do not retain jurisdiction.