## FISCHER-FLACK, INC v CHURCHFIELD

Docket No. 108806. Submitted December 20, 1988, at Lansing. Decided October 16, 1989.

Fischer-Flack, Inc., contracted with Robert D. Churchfield, doing business as Currently Wiring, to supply electrical materials for an electrical subcontract Churchfield had with East Lansing Realty and Development, Inc., which in turn had a contract to build an apartment complex which was owned by Max Larsen, with the mortgage on the same being held by City Bank and Trust Company, N.A. Fischer-Flack purportedly give the statutory notice of furnishing supplies to the owner, the owner's designee and the general contractor on September 25, 1985. The first supplies were furnished by Fischer-Flack to the property on January 3, 1986, and the last supplies were furnished on September 25, 1986. On December 3, 1986, Fischer-Flack recorded a claim of lien in the amount of $35,144.11 for supplies it had furnished to Churchfield but for which it had not been paid. On December 1, 1987, Fischer-Flack filed in Ingham Circuit Court a complaint to foreclose the lien, naming Churchfield, the owner and the bank as defendants. The owner and the bank claimed that the owner, the owner's designee and the general contractor could not remember receiving the September 23, 1985, notice of furnishing and that their first notice that plaintiff intended to claim a lien occurred on September 19, 1986, when plaintiff informed the general contractor of the same, at which time there was a balance of $14,514.92 owing from the owner to Churchfield. The owner and the bank moved for summary disposition, claiming that the September 23, 1985, notice was ineffective under the Construction Lien Act because it was filed prior to the furnishing of the first materials and that they were thus liable only for the $14,514.92 that was still owing to Churchfield on the date the general contractor received actual notice of the lien. The trial court, Michael G. Harrison, J., agreed and entered a judgment in favor of plain-

REFERENCES

Am Jur 2d, Liens §§ 7, 8.

See the Index to Annotations under Liens and Encumbrances; Mechanics' Liens.

tiff and against the owner and the bank in the amount of $14,514.92. Plaintiff appealed.

The Court of Appeals *held:*

The notice of furnishing sent by plaintiff prior to the furnishing of the first materials was in substantial compliance with the provisions of the Construction Lien Act and in accordance with the legislative intent of that act. Since the notice satisfied the notice requirement of the Construction Lien Act, plaintiff was entitled to a lien in the amount of the unpaid balance owed to it.

Reversed and remanded.

MICHAEL J. KELLY, P.J., dissented. He would hold that supplying a notice of furnishing prior to the actual furnishing of the first supplies does not satisfy the notice requirement of the Construction Lien Act. He would affirm.

LIENS — CONSTRUCTION LIEN ACT — NOTICE OF FURNISHING — SUBSTANTIAL COMPLIANCE.

A notice of furnishing given by a subcontractor or supplier to the designee of the owner and the general contractor prior to the furnishing of the first labor or materials is in substantial compliance with the provisions of the Construction Lien Act and in accord with the legislative intent of that act; such notice is sufficient to allow perfection of a lien under the Construction Lien Act (MCL 570.1109[1]; MSA 26.316[109][1]).

*Cook, Nash & Deibel* (by *M. Randall Jurrens*), for plaintiff.

*Stanley, Davidoff & Gray, P.C.* (by *L. W. Gray*), for Max Larsen.

Before: MICHAEL J. KELLY, P.J., and GRIBBS and V. L. WASHINGTON,* JJ.

V. L. WASHINGTON, J. The issue on appeal is whether a construction lien claimant substantially complies with § 109 of the Construction Lien Act, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.*, where the claimant issues a notice of furnishing *prior* to the date it first furnishes supplies on the construction site.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The facts of this case are largely uncontroverted. In early 1985, defendant Max Larsen (hereinafter owner) purchased certain real property on which construction of a major apartment complex called "On the Pond" was to be developed. Defendant City Bank & Trust Company held the mortgage on the property. East Lansing Realty and Development, Inc., was the general contractor. Defendant Robert D. Churchfield, doing business as Currently Wiring, was an electrical subcontractor and plaintiff, Fischer-Flack, Inc., was the supplier of electrical materials to Churchfield.

Sometime in 1985, Churchfield contacted plaintiff to secure a source of electrical supplies. On September 23, 1985, plaintiff purportedly provided a "notice of furnishing" by certified mail to the owner, his designee, and the general contractor, pursuant to § 109 of the Construction Lien Act, MCL 570.1109(1); MSA 26.316(109)(1). Plaintiff furnished its first supplies to the property on January 3, 1986, and furnished its last supplies on September 25, 1986. Plaintiff recorded a claim of lien on December 3, 1986, which alleged that it had supplied $101,109.50 of supplies on the property but had received only $65,965.39 in payments, leaving an unpaid balance of $35,144.11. On December 1, 1987, plaintiff filed a complaint to foreclose the construction lien against the owner, the subcontractor and the bank in the amount of $35,144.11.

The owner and the bank (hereinafter defendants) claim that neither the owner, his designee, nor the general contractor recalled receiving the notice of furnishing mailed by plaintiff on September 23, 1985. Defendants claim that the general contractor first learned that plaintiff intended to claim a lien on the property in a telephone conversation on September 19, 1986. At that time, the

balance owing to the subcontractor from the owner was $14,514.92.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), claiming that plaintiff's September, 1985, notice of furnishing did not comply with the Construction Lien Act, since the notice was issued *prior* to the date that supplies were first furnished by plaintiff on the property. Defendants asserted that plaintiff's claim of lien against them was limited to $14,514.92, the amount owed to the subcontractor when the general contractor received actual notice of the claimed lien. The trial court agreed and entered an order on April 27, 1988, limiting defendant's liability to plaintiff to $14,514.92. It is from that order that, plaintiff appeals.

To preserve its claim rights, a supplier who contracts with a contractor or a subcontractor to provide material used in the improvement of real property must provide a "notice of furnishing." MCL 570.1109(1); MSA 26.316(109)(1). Section 109 of the Construction Lien Act sets forth the procedures to be followed and states, in pertinent part:

> [A] subcontractor or supplier who contracts to provide an improvement to real property shall provide a notice of furnishing to the designee and the general contractor, if any, as named in the notice of commencement at the address shown in the notice of commencement, either personally or by certified mail, *within 20 days after furnishing the first labor or material* . . . . If service of the notice of furnishing is made by certified mail, service is complete upon mailing. [*Id.* Emphasis added.]

On appeal, defendants assert that plaintiff did not comply with the above procedures because plaintiff provided the notice of furnishing *before* it

furnished the first materials on the property, rather than *after* it furnished the materials.

Plaintiff contends that its issuance of the notice of furnishing in September, 1985, to the appropriate parties constitutes substantial compliance with the Construction Lien Act and that it is therefore entitled to receive payment in the amount of $35,144.11, rather than $14,514.92 as limited by the trial court.[1] We agree.

Section 302(1) of the Construction Lien Act, MCL 570.1302(1); MSA 26.316(302)(1), expressly provides:

> This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them.

In construing this provision, we note that the rules of statutory construction were concisely stated in *Bath Charter Twp v Clinton Co,* 171 Mich App 395, 397-398; 429 NW2d 664 (1988):

> The primary rule of statutory construction is to discover and give effect to the legislative intent. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184, 187; 253 NW2d 646 (1977), reh den 400 Mich 1029 (1977). Legislative intent is to be derived from the actual language used in the statute. *In re Certified Questions,* 416 Mich 558, 567; 331 NW2d 456 (1982). No interpretation is necessary where the language used is

---

[1] Plaintiff notes in its brief on appeal that Max Larsen or City Bank & Trust Company has paid $14,514.92 to plaintiff in recognition of plaintiff's lien claim and in compliance with the lower court's order. Therefore, this amount should be deducted from the unpaid balance and any further lien to which plaintiff is deemed entitled should be in the amount of the reduced unpaid balance.

clear and unambiguous. *Id.* Where an ambiguity exists, a court must look to the object of the statute, the evil or mischief which it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose. *Pittsfield Twp v Saline,* 103 Mich App 99, 104-105; 302 NW2d 608 (1981).

Section 302(1) clearly states that the statute is remedial in nature and shall be liberally construed to secure the beneficial results and purposes intended. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977), reh den 400 Mich 1029 (1977); *Norcross Co v Turner-Fisher Associates,* 165 Mich App 170, 178-179; 418 NW2d 418 (1987). However, we find that the phrase "substantial compliance" is ambiguous in nature. Therefore, we must look to the object of the statute and the purposes intended by the Legislature in enacting the act to determine if plaintiff substantially complied with the Construction Lien Act.

It has long been recognized that construction lien laws, also known as mechanic's lien laws, serve a dual purpose: to protect the lien claimants' right to payment for wages or materials and to protect owners from paying twice for such services. This dual purpose was embodied by the Legislature in the object clause of the Construction Lien Act:

> An act to establish, protect and enforce by lien the rights of persons performing labor or providing material or equipment for the improvement of real property; to provide for certain defenses thereto . . . .

The legislative intent is further revealed in the legislative analysis which was prepared prior to the adoption of the act:

Lenders and owners must be able to identify all potential lien claimants before funds are disbursed so that they can protect themselves from lien claims. . . . As a practical matter, the [construction lien] system exists to ensure that subcontractors, suppliers and laborers are paid for their labor or materials. [*Senate Legislative Analysis,* HB 4053, pp 9, 10, December 9, 1980.]

In *Brown Co v San Bernadino Co Superior Court, Appellate Dep't,* 148 Cal App 3d 891, 897; 196 Cal Rptr 258 (1983), a California appellate court interpreted a statute similar to the one in question in the present case. It stated:

In prescribing that the preliminary notice "shall be given not later than 20 days after the claimant has first furnished labor, service, equipment, or materials to the job-site, . . ." subdivision (c) of section 3097 does not specify an initial date for serving the preliminary notice nor does it specify a date before which notice may not be given; it merely provides a deadline or cut-off time after which a preliminary notice may not be served with respect to services theretofore performed or labor, service, equipment or materials theretofore furnished. Had the Legislature intended that a notice given after materials had been contracted for but before they had been delivered would not be effective, it would undoubtedly have prescribed a time before which notice could not be validly given. The purpose of requiring notice to the owner is to alert the owner to the possible need for protecting himself or herself; and the earlier the notice is given the more likely it is the statutory purpose will be effectuated.

In addition, several Michigan cases have found that statements or claims of lien are still effective if filed prior to the time the money is due. See *Saginaw Lumber Co v Wilkinson,* 266 Mich 661; 254 NW 240 (1934); *Knowlton v Gibbons,* 210 Mich

547; 178 NW 63 (1920); *Smalley v Ashland Brown-Stone Co,* 114 Mich 104; 72 NW 29 (1897). Thus, it is clear that premature notice of a claim of lien in construction cases has not been fatal in the past, and premature notices have been enforced by the Michigan Supreme Court.

As is the case with the California statute referred to above, MCL 570.1109(1); MSA 26.316(109)(1) does not specify a date before which notice may not be given. We believe that to accept defendants' position that plaintiff should not be afforded the protections of the Construction Lien Act because plaintiff gave too much notice would contravene the intent of the Legislature and is an unduly restrictive construction of the statute. The notice of furnishing in this case, although seemingly premature in nature, is in accord with the statutory purpose of notifying the owner, the general contractor and the lender of potential lien claimants. Moreover, plaintiff's providing of notice before the actual materials were supplied is consistent with the statutory purpose of facilitating the right to claim for work or materials furnished. See *Brown Co, supra.*

We hold that plaintiff substantially complied with § 109(1) of the Construction Lien Act and was therefore entitled to a lien in the amount of $35,144.11 against the subject property.[2] We reverse the trial court's grant of summary disposition in favor of Max Larsen and City Bank & Trust Company and remand this matter to the trial court for entry of an appropriate order consistent with this Court's holding.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

[2] See n 1, *supra.*

GRIBBS, J., concurred.

MICHAEL J. KELLY, P.J. *(dissenting).* I don't see anything ambiguous about the provision of MCL 570.1109(1); MSA 26.326(109)(1) which was quoted with emphasis in the majority opinion and provides that notice shall be given " . . . within 20 days after furnishing the first labor or material . . . ." The majority says a notice given one hundred days *before* the furnishing of supplies is substantial compliance with the statute. That is not a "liberal construction," it is a complete departure from the statute.

We do not know the context in which disbursements from financing were made in this endeavor. Often escrow accounts are established with title companies, mortgage companies, banks, insurance companies or other fiduciaries which rely heavily on recording mechanisms. If an examiner of recorded documents were to assume freedom of encumbrance due to his reliance on statutory dates for insurance of title, the majority's decision would pose problems. This statute is clear and needs no judicial interpretation. *Smith v Ruberg,* 167 Mich App 13; 421 NW2d 557 (1988). *Action Auto, Inc v Anderson,* 165 Mich App 620; 419 NW2d 36 (1988), lv den 430 Mich 873 (1988). To say that providing the notice prior to furnishing the first material complies with the statute is to render the word "after" surplusage or nugatory, contrary to the rules of statutory construction. Plaintiff's act in providing the notice of furnishing over ninety days prior to furnishing the first material is not in compliance with the statute, nor can it be considered in substantial compliance with the statute. Saying it "isn't so" under the rubic of "liberal construction" amounts to literal destruction here.

The trial court did not err in granting defendant's motion for partial summary disposition pursuant to MCR 2.116(C)(10), and I would therefore affirm.