M D MARINICH, INC v MICHIGAN NATIONAL BANK

Docket No. 132193. Submitted March 10, 1992, at Lansing. Decided April 6, 1992, at 9:45 A.M. Leave to appeal sought.

M. D. Marinich, Inc., brought an action in the Washtenaw Circuit Court against Michigan National Bank, White Swan Limited Partnership, and others, seeking enforcement of a construction lien through foreclosure on a building owned by White Swan and mortgaged to Michigan National. Michigan National had not recorded its mortgage interest until after a general contractor previous to Marinich had commenced construction. The court, Melinda Morris, J., entered a judgment for Marinich, determining that under the Construction Lien Act, MCL 570.1101 et seq.; MSA 26.316(101) et seq., its construction lien had priority over Michigan National's mortgage interest. Michigan National appealed.

The Court of Appeals held:

1. MCL 570.1119(3); MSA 26.316(119)(3) provides in part that a construction lien takes priority over all other interests, liens, or encumbrances that are recorded after the first actual physical improvement. Marinich's construction lien relates back to the first actual physical improvement by the first general contractor and therefore is superior to Michigan National's mortgage interest.

2. The validity or priority of Marinich's construction lien was not affected by changes in the contract between Marinich and White Swan or by changes in the construction plans. Those changes did not depart from the original intent of renovating the building and constructing an addition.

3. Allowing a subsequent builder to relate its construction lien back to the time of the first actual physical improvement by a prior builder will not inhibit lenders in providing construction loans. The Construction Lien Act provides mortgagees with other, adequate protections and remedies.

Affirmed.

REFERENCES

Am Jur 2d, Mechanics' Liens §§ 268-270, 397, 401-402.

What constitutes "commencement of building or improvement" for purposes of determining accrual of mechanic's lien. 1 ALR 3d 822.

MECHANICS' LIENS — PRIORITY — MORTGAGES — CONSTRUCTION LIEN
ACT.
A construction lien takes priority over a mortgage interest that is
recorded after the first actual physical improvement to the
subject property regardless of whether the improvement was
done by the lienholder or a prior builder who commenced the
project (MCL 570.1119[3]; MSA 26.316[119][3]).

*Federlein, Grylls & Keranen, P.C.* (by *Thomas M. Keranen*), for the plaintiff.

*John F. Rohe,* for the defendant.

Before: SHEPHERD, P.J., and SAWYER and CONNOR, JJ.

CONNOR, J. Defendant Michigan National Bank appeals as of right from the trial court's judgment of August 9, 1990, declaring that plaintiff had a valid construction lien against real property and that the lien was superior to defendant's mortgage under the priority provisions of the Construction Lien Act, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.* The trial court decided this case without a jury after hearing testimony on April 12 and 17, 1990. We affirm the trial court's decision.

I

The competing liens in this case were for a construction project involving the White Swan Building on Catherine Street in Ann Arbor, Michigan, space in which was leased for commercial use. The building was owned by White Swan Limited Partnership (WSLP). Catherine Street Construction Company (CSCC) initially served as the general contractor on the project beginning in January 1985.

Defendant agreed to finance the construction of the building. The senior loan officer involved in

the negotiations described the project proposed by WSLP as a rehabilitation of the existing building and an addition to the existing building on the north side. WSLP requested $1.2 million for the entire project, but defendant approved a loan of only $500,000 to cover the cost of rehabilitating the existing structure. Defendant postponed approval of the remainder of the loan request until the initial work was completed and the space in the existing structure was leased. Work on the basement was not included in defendant's agreement to finance construction. Defendant relied on a contract between WSLP and CSCC, dated April 1, 1985, to close on the loan. It was conceded by defendant's representative, however, that this contract included a provision for changes to be made in the agreement and that such changes in contracts were not unusual in the construction business. Moreover, at the time defendant was negotiating this loan, its representative did inspect the property and, although he could not recall conclusively, he believed that work had probably already begun on the construction. Defendant filed and recorded its mortgage on the property for $500,000 on June 4, 1985.

Plaintiff, a general contractor, was contacted sometime in November 1985 to take over and complete this project in place of CSCC and correct work already performed. Plaintiff's contract with the owners was an oral one.

Plaintiff's president, Michael Marinich, who had participated in the negotiations, testified regarding the terms of the contract and the work plaintiff agreed to perform. According to Marinich, the agreement was for plaintiff to do the entire project, including weatherproofing the building, repairing work already done that was in violation of building codes or did not please existing tenants,

working on the architectural plans for feasibility, proceeding with plans to build an addition to the north end of the building, and completing the building as economically as possible. Work actually performed by plaintiff on the addition was primarily limited to preparing new architectural drawings and building plans when the old ones were not feasible. The majority of work on the construction project had been completed by June 1986, with the first and third floors being leased. Only minor work was done on the basement at that point.

Although the original plans called for the basement to be used as leased retail space in late 1986, plaintiff was informed that the basement would instead be used as additional leased office space for a then current tenant. Plaintiff performed the necessary work to accomplish this change, which included revising the floor plans, partitioning areas, and accommodating mechanical services in the basement. While the revisions made in the basement plans required a new building permit, Marinich indicated that it was common for plans to change during the course of work, and this change was merely part of the entire construction project. In Marinich's opinion, it was consistent with industry practice to honor modifications in the scope of the work to be performed pursuant to contract.

Work was still in progress on the basement when plaintiff stopped working some time in February 1987 because the entire project appeared to be "dead in the water." The work was interrupted before plaintiff could build the addition.

Plaintiff filed a construction lien against the property on April 2, 1987, in the amount of $55,647.19.

Plaintiff filed this action, seeking foreclosure and

sale of the property in satisfaction of its lien among other remedies. The parties stipulated to many facts, and most of the issues were resolved by summary disposition. It remained for the court to determine which of the two liens, plaintiff's construction lien or defendant's mortgage, had priority. The trial court conducted an evidentiary hearing and held that plaintiff's construction lien related back to the first actual physical improvement made on the project in January 1985, which gave plaintiff priority under MCL 570.1119(3); MSA 26.316(119)(3) over defendant's subsequently recorded mortgage.

## II

The primary issue raised before this Court is whether plaintiff's construction lien had priority over defendant's mortgage. The resolution of this issue depends on whether plaintiff's construction lien, when determining priority, relates back to the date of the commencement of construction by the first general contractor in January, 1985. Defendant contends that its mortgage, which was recorded on June 4, 1985, should take priority over plaintiff's lien because plaintiff, the second general contractor, did not personally contract to take over the project until November 1985 and did not personally commence building until 1986. Defendant additionally argues that plaintiff had more than one contract for work on this project and that plaintiff's liens only have priority over defendant's mortgage from the date plaintiff's work began with regard to each of the contracts and only to the extent that plaintiff completed the work.

## III

Resolution of the issue raised on appeal requires

this Court to interpret and apply the Construction Lien Act, as enacted by 1980 PA 497 and as amended by 1981 PA 191, MCL 570.1101 *et seq.*; MSA 26.316 *et seq.* The cardinal rule of statutory construction is to give effect to the Legislature's intent. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956); *Kizer v Livingston Co Bd of Comm'rs,* 38 Mich App 239, 246; 195 NW2d 884 (1972). In order to ascertain and give effect to legislative intent, the changes in the act must be construed in light of preceding statutes and the historical legal development of mechanics' or construction liens.

The development of this area of the law before 1958 was discussed by the Michigan Supreme Court in *Williams & Works, Inc v Springfield Corp,* 408 Mich 732, 740-743; 293 NW2d 304 (1980). Under prior statutes and case law, the commencement of a building provided notice to all parties of the existence of mechanics' liens emanating from work performed in the construction of the building. *Id.* at 742. In *Kay v Towsley,* 113 Mich 281, 283; 71 NW 490 (1897), the Court held that mechanics' liens had priority over mortgages that attached after the commencement of the building "though no part of the labor performed or materials furnished for which the lien is claimed was done or performed until after the execution and recording of the mortgage." *Id.* at 283.

> It is held that, under such a provision, liens attach as of the date of the commencement of the building, erection, or other improvement, regardless of the time when, or the person by whom, the particular work was done or the materials furnished for which a lien is claimed. [*Id.*]

It was this "visible notice" when the first permanent work was done on the land that fixed a "date

to which all mechanics' liens related back, even if other contractors started their work weeks or months later." *Williams & Works, supra* at 743. The physical work began on a building or land where the building would sit provided prospective lenders or purchasers constructive notice of potential liens. *Id.* at 742. Inequities that would otherwise result if a mortgagee were allowed to assert its lien against property for a construction loan to secure repayment by the sale of materials or work supplied by lien claimants were remedied by construction or mechanics' lien statutes so "that those who make loans after the work on the building has been commenced must take subject to valid mechanics' liens acquired incident to such construction." *Winkworth Fuel & Supply Co v Bloomsbury Corp,* 266 Mich 298, 302; 253 NW 304 (1934).

Our Legislature enacted the Construction Lien Act effective March 31, 1981, in order to remedy many of the problems associated with a preceding act, the Mechanics' Lien Act of 1891. The Construction Lien Act was declared by the Legislature to be a remedial statute and shall be liberally construed to secure the beneficial results, intents, and purposes of the act. MCL 570.1302(1); MSA 26.316(302)(1); *Fischer-Flack, Inc v Churchfield,* 180 Mich App 606, 610; 447 NW2d 813 (1989). It has long been recognized that construction lien laws serve two purposes: to protect the right of lien claimants to payment for wages or materials and to protect owners from paying twice for such services. *Id.* at 611.

IV

The current provision of the Construction Lien Act that sets forth the priorities granted construc-

tion liens over other encumbrances is MCL 570.1119(3); MSA 26.316(119)(3). That section provides as follows:

> A construction lien arising under this act shall take priority over all other interests, liens, or encumbrances which may attach to the building, structure, or improvement, or upon the real property on which the building, structure, or improvement is erected when the other interests, liens, or encumbrances are recorded subsequent to the first actual physical improvement.

Under this section, a construction lien takes effect upon the first actual physical improvement and has priority over a mortgage interest recorded after the commencement of the construction work. *Durant Construction, Inc v Gourley,* 125 Mich App 695, 698; 336 NW2d 856 (1983). An actual physical improvement, as defined under the act, generally requires that visible, on-site construction work has begun on the property. MCL 570.1103(1); MSA 26.316(103)(1).

The Construction Lien Act was enacted as 1980 PA 497. One of the changes made as a result of the act was the use of the term "actual physical improvement" to define the point at which construction liens attach for purposes of determining priority among competing liens or encumbrances. The term was subsequently changed by 1981 PA 191 to "first actual physical improvement." MCL 570.1119(3); MSA 26.316(119)(3).

Defendant's argument on appeal is that the current act prioritizes construction liens arising under "a contract" where the "first actual physical improvement" undertaken pursuant to the contract precedes the recording of the mortgage. Therefore, defendant argues, plaintiff's lien relates back only to the date plaintiff began work on this

project according to the terms of plaintiff's contract for construction services.

We are not persuaded by defendant's argument because we can find nothing in the Construction Lien Act that indicates that the Legislature intended to change how construction liens traditionally relate back to the date when construction commenced. The interpretation defendant urges is clearly not indicated from either the plain meaning of the act or the available legislative history. We believe MCL 570.1119(3); MSA 26.316(119)(3) continues to reflect the longstanding tradition of affording priority in the payment of those laborers, contractors, and suppliers who provide the building blocks and whose physical efforts go into a construction project. The underlying intent and purpose of the act is to protect the right of lien claimants to payment for wages or materials when others have been provided with notice that there may be outstanding liens against the property because construction work is in progress. *Williams & Works, supra* at 742; *Fischer-Flack, supra.*

Defendant is correct that the Legislature's remedial efforts in the Construction Lien Act were also directed toward protecting mortgagees from unknown lien claimants.

> Lenders who have financed major construction projects in return for mortgages often discover too late that they have loaned money on titles clouded by the emergence of unrecorded mechanics liens. According to the law revision commission, legal remedies have been inadequate to prevent lenders from incurring substantial losses when property owners default, particularly when construction has not been completed. Thus, banks and other lenders are reluctant to finance construction mortgages unless they receive large fees and substantial interest to compensate them for their risks. . . .

These uncertainties all arise from the ambiguities of the present lien law, and have contributed to the unavailability of construction funds. [House Legislative Analysis, HB 4053, January 26, 1981.]

From a review of the Construction Lien Act, the remedial changes made to the act were limited to the priority given mortgage lenders under MCL 570.1119(4); MSA 26.316(119)(4), rather than the priority given to construction lienholders found at MCL 570.1119(3); MSA 26.316(119)(3). In this case, although defendant argued below that it had priority, in part, under MCL 570.1119(4); MSA 26.316(119)(4), that argument has been abandoned on appeal, and it is clear under the facts of this case that construction had already begun by the time defendant recorded its mortgage, thereby making priority under MCL 570.1119(4); MSA 26.316(119)(4) unavailable to defendant.

Accordingly, we believe the trial court was correct in holding that plaintiff's construction lien related back to the first actual physical improvement made for this project and that, under the Construction Lien Act, plaintiff's lien was superior to defendant's mortgage.

V

It was also defendant's position below that plaintiff performed work in this case on more than one project or pursuant to more than one contract. Generally, the right to a lien under the Construction Lien Act stems from the contract made for improvements. MCL 570.1107(1); MSA 26.316(107)(1). "Contract," as used in the act, is given a broad definition that includes any type of contract and all additions, deletions, or modifications. MCL 570.1103(4); MSA 26.316(103)(4). "Improvements" is also broadly defined and includes, among other

services provided, architectural planning and construction management. MCL 570.1104(7); MSA 26.316(104)(7). A construction "project" is defined as the aggregate of the improvements contracted for by the owner. MCL 570.1106(2); MSA 26.316(106)(2).

Under the preceding statute, the type of work performed that was subject to a construction lien did not depend on whether a lien claimant entered into separate contracts, as long as the work related to the same building project. *David Lupton's Sons Co v Berghoff Printing Co,* 249 Mich 455, 458; 229 NW 810 (1930); *Union Trust Co v Casserly,* 127 Mich 183, 185; 86 NW 545 (1901). In contrast, where the work does not go toward building the structure as originally contemplated, but to a completely different structure, work on the building as originally planned will be given priority over work done to make the structure a completely different building. *Strom Construction Co v Raymond,* 356 Mich 79, 84-86; 95 NW2d 879 (1959).

In light of the liberal interpretation we must give the Construction Lien Act, we believe the act contemplates that changes, amendments, and modifications will be made to contracts during the course of work. Nothing in the act indicates that there is any intent to limit the number of contracts a laborer or other claimant can enter into and be given priority under the act. The only limitations we can discern from the act are that the amount of a claim cannot exceed the amount of a contract, MCL 570.1107(1), (6); MSA 26.316(107)(1), (6), and the improvements made must relate to the project, as referred to in the notice of commencement, MCL 570.1108(1); MSA 26.316(108)(1). A lender who wishes to learn the extent of outstanding contracts on a project can rely on sworn statements under MCL 570.1110(7);

MSA 26.316(110)(7) and protect its position of first priority under MCL 570.1119(4); MSA 26.316(119) (4) so surprises do not later occur.

The trial court found that all of plaintiff's work in this case related to the project to rehabilitate the existing building and add a structure to its north side. Although there were changes made in the original construction plans, which were generally limited to the use of the basement area and plan changes for the addition, these modifications all related to the project as originally contemplated, i.e., a rehabilitation of the building with an addition. We believe the trial court's findings in this regard were supported by the record and were not clearly erroneous. MCR 2.613(C); *Norcross Co v Turner-Fisher Associates,* 165 Mich App 170, 182; 418 NW2d 418 (1987).

VI

Defendant has also suggested that the trial court's interpretation of the Construction Lien Act will have a chilling effect on the construction finance industry because lenders would not risk subordinating their mortgage interests to lien claimants who are not known at the time a loan is made but are able to relate their liens back to the date of the first actual physical improvement on the project. While we agree with defendant that there is a potential risk for lenders contemplating the financing of construction projects, there is an adequate remedy afforded such lenders by the Construction Lien Act, MCL 570.1119(4); MSA 26.316(119)(4), which provides for the recording of the mortgage interest before the first actual physical improvement is made. In addition, advances made by mortgage lenders after the first actual physical improvement is made may still enjoy

priority over construction liens under MCL 570.1119(4); MSA 26.316(119)(4) if the mortgagee has received a sworn statement from the contractor pursuant to MCL 570.1110; MSA 26.316(110).

Affirmed.