### STROM CONSTRUCTION COMPANY *v.* RAYMOND.

1. MECHANICS' LIENS—PURPOSE OF ACT.
   The purpose of the mechanics' lien law is to accord a preferred claim to those who perform work or furnish material which enters into and enhances the value of improvements on specific property presumably bettered thereby, the security of attaching creditors and mortgagees being so enhanced in value thereby that they are not prejudiced (CL 1948, § 570.9).

2. SAME—PRIORITY OF LIENS—CHANGE OF BUILDING.
   Lien of plaintiff who furnished labor and materials for shell base for a grandstand and for which a bill to foreclose had been filed before commencement of work on the same building by which it was converted into a place to conduct automobile auctions was a prior lien and not a simultaneous lien, since the later building, structure or improvement was not the same as the one for which plaintiff's lien attached (CL 1948, § 570.9).

REFERENCES FOR POINTS IN HEADNOTES
[1] 36 Am Jur, Mechanics' Liens § 4.
[2] 36 Am Jur, Mechanics' Liens §§ 168, 176.
[3] 36 Am Jur, Mechanics' Liens § 181.
   Time when contractor commenced work or time when labor or material for which lien is claimed was furnished as date of mechanic's lien.  83 ALR 925.
[4] 3 Am Jur, Appeal and Error § 245.

3. SAME—MORTGAGES—PRIORITY.

  Lien for labor and materials on work commenced prior to the giving of defendants' mortgages, takes precedence over them (CL 1948, § 570.9).

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MECHANICS' LIENS—MORTGAGES—PRIORITY.

  Determination as to priority as between other liens and mortgages than plaintiff's is not made, where appeal, as presented to the Supreme Court, does not call for such an adjudication.

Appeal from Ottawa; Smith (Raymond L.), J. Submitted January 14, 1959. (Docket Nos. 71, 72, Calendar Nos. 47,763, 47,764.) Decided April 13, 1959.

Bill by Strom Construction Company, a Michigan corporation, against William I. Raymond and others to foreclose mechanics' lien. Similar action by Floyd R. Sievers against Frank G. Deane, trustee in bankruptcy of William I. Raymond, Strom Construction Company, a Michigan corporation, Cascade Lumber Company, named as a Michigan corporation, Marshall Hulbert and others. Cross bill by John Brunsink, doing business as Cascade Lumber Company. Cases consolidated for trial and appeal. Decree holding liens simultaneous mortgages. Plaintiff appeals. Reversed to grant plaintiff priority.

*Deeb, Dunn & Elferdink* (*Earl Waring Dunn,* of counsel), for plaintiff Strom Construction Company.

*Linsey, Shivel, Phelps & Vander Wal* (*John H. Vander Wal,* of counsel), for defendant Cascade Lumber Company.

DETHMERS, C. J. Defendant William Raymond owned real estate on which he desired to build a track and facilities for conducting automobile races. Defendants Wierenga put in the race track. In pay-

ment, Raymond and wife gave them 2 mortgages on the property, the first dated June 12, 1953, recorded June 24, 1953, and the second dated September 12, 1953, recorded October 1, 1953. Raymond engaged plaintiff Strom Construction Company, hereinafter called plaintiff, to construct a shell consisting of a concrete crash wall along the track, 2 concrete end walls and a side wall of concrete blocks. The shell was to serve as the foundation or base for a grandstand, to consist of steel bleachers on a steel framework.

Plaintiff commenced work on the shell on June 8, 1953, and finished it on July 7, 1953. The end walls of the shell were not of a uniform height from one end to the other, but were stepped up to permit a passageway at the foot of the grandstand. There was to be no roof over the shell, partly because that would have increased insurance rates. After completion of the shell a roof could not have been added without major changes on the walls. Raymond had no intention of making a building of it.

On September 1, 1953, plaintiff filed its statement of account and lien in the office of the register of deeds and on October 20, 1953, filed its bill of complaint to forclose that lien.

After plaintiff had completed the shell, Raymond abandoned the idea of erecting a steel grandstand on it. Instead, he had wooden bleachers built on the opposite side of the track. After that, there was nothing further to be done on the project as Raymond planned it at that time. He opened the gates and conducted races there.

Later in the fall of 1953 an auctioneer proposed to Raymond that the shell be converted into a building by covering it with a roof and installing windows, doors, a heating system and other details, so that it could be used as a place for selling automobiles at auction. Raymond decided to do so. For that pur-

pose defendant Cascade Lumber Company, hereinafter called defendant, furnished materials between November 28, 1953, and January 12, 1954. Sievers, plaintiff in the second suit, performed the labor, from December 18, 1953, to February 5, 1954, in constructing the roof and building and installing window frames, doors, et cetera. In order to build the roof, it was necessary to run a beam across the 200-foot length of the shell supported by the end walls and 4 upright timbers set upon concrete footings in the ground. The joists used to support the ceiling or roof could not have been used to support bleachers in a grandstand.

Defendant filed with the register of deeds a statement of account and lien on March 9, 1954, and Sievers did likewise on March 15, 1954. On June 28, 1954, Sievers brought suit to foreclose his lien. The 2 cases were consolidated for trial.

The trial court held the mentioned liens and mortgages, together with another mortgage given defendant Hulbert after plaintiff's lien had attached, to be simultaneous mortgages under the mechanics' liens act and decreed that the premises be sold and the proceeds distributed pro rata among the holders of them.

Plaintiff alone appeals, contending that its lien is entitled to priority over the other claims. There is no cross appeal on file in this Court. Briefs have been filed only on behalf of plaintiff and defendant.

Controlling provisions of the statute are contained in parts First and Fourth of CL 1948, § 570.9 (Stat Ann 1953 Rev § 26.289), which read:

"First, As between persons claiming liens under this statute, the several liens upon the same property attaching by reason of work, labor or materials furnished in carrying forward or completing the same building or buildings, machinery, structure or im-

provement, shall be deemed simultaneous mortgages. * * *

"Fourth, The liens for such labor or materials furnished, including those for additions, repairs and betterments, shall attach to the buildings, machinery, erection, structure, or improvement for which they are furnished or done, subject to any prior recorded title, claim, lien, incumbrance, or mortgage to or upon the land upon which such building or buildings, machinery, erection, structure or improvement belongs or is put. Any person holding a lien for such labor or materials furnished upon any premises subject to any prior recorded lien, incumbrance or mortgage may pay off any such prior lien, incumbrance or mortgage, and shall thereupon be subrogated to all the rights of the prior holder of such lien, incumbrance or mortgage."

As presented on appeal here, the only issue is whether plaintiff's lien takes precedence over the other liens and mortgages. This gives rise to the question whether plaintiff's construction of the shell and Sievers' and defendant's furnishing of labor and materials for converting it into a building constituted "labor or materials furnished in carrying forward or completing the same building, * * * structure or improvement." In its opinion the trial court said that "the structure was the same although its purpose and use were drastically altered." It based its holding on what it denominated the spirit and principle of the mechanics' lien law as expressed in *McClintic-Marshall Co.* v. *Ford Motor Co.*, 254 Mich 305, 311 (77 ALR 807), in the following dicta:

"The mechanics' lien law * * * is framed upon the theory that those who perform work or furnish material which enters into and enhances the value of improvements on real estate are entitled to a preferred claim against and a lien upon the specific property presumably bettered by the performance of such labor and the furnishing of such materials;

the security of attaching creditors and mortgagees being so enhanced in value thereby that they are not prejudiced."

It was the court's view that both plaintiff and defendant had contributed to the improvements and "presumably bettered" them, and that the value thereof was presumably enhanced, by defendant's furnishing of materials, in an amount equal to the total of its claim therefor, and, hence, that plaintiff is not prejudiced by treating the liens of both as simultaneous. Indiscriminate application of that "presumably bettered" doctrine as the basis for holding subsequent liens simultaneous with prior ones would render meaningless the provision of part Fourth of the above section of the statute which makes subsequent liens subject to prior liens. We may not so emasculate it. The problem, then, is whether plaintiff's lien was "prior," within the meaning of part Fourth, or "simultaneous," under part First. It was prior in the respect that it had attached, upon plaintiff's commencement of work, and a statement thereof had been filed before defendant's lien came into being. It was prior, therefore, unless made simultaneous by the provisions of part First. That brings us back to the question whether the liens attached by reason of labor or materials furnished in carrying forward or completing the same building, structure or improvement. As we have seen, that may not be determined, in disregard of part Fourth, on the sole basis that both lien holders presumably bettered the improvements upon the premises.

Defendant relies on *Union Trust Co.* v. *Casserly,* 127 Mich 183; *Sandusky Grain Co.* v. *Borden's Condensed Milk Co.,* 214 Mich 306; and *David Lupton's Sons Co.* v. *Berghoff Printing Co.,* 249 Mich 455. In *Casserly,* where a materialman furnished materials

from time to time for building a house, it was held that the 60 days for filing statement of lien did not start to run until the date of the last delivery and that each delivery did not give rise to a separate contract and the necessity for filing within 60 days therefrom. The building of a house was all that was ever contemplated or done in that case. The delivery of the materials, although made at different times and ultimately in an amount exceeding the original estimate was always for that one purpose and intended building. The question and situation in *Grain Company* was the same. And so it was, also, in *Lupton's Sons Company,* although in that case changes in plans for a printing plant occasioned the entering of 3 successive contracts for its completion. In each of these cases it was a matter of simple logic and common sense to conclude that but 1 building was involved, namely, the one planned in the first place and ultimately completed. Significant is the following language from *Casserly* (p 185):

"The correct rule is stated in Phillips, Mechanics' Liens, § 229, as follows:
" 'Where work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct, matters of settlement, the whole account must be treated as a unit, or as being but a single contract.' "

Distinguishable is the instant case, in which it can not be said that, when Raymond and plaintiff contracted together and plaintiff completed its work, they had had it in contemplation that that which plaintiff furnished and that which was not yet intended but which defendant later furnished should

"form an entire whole" and "that the whole should form but one, and not distinct, matters of settlement." When plaintiff was performing its contract to construct a shell base for a grandstand and when it had completed it, it was not contemplated that the steel grandstand project, to which plaintiff had a right to look for security, would be abandoned and that subsequently the shell would be covered by a roof and converted into a building. When so completed, in the spring of 1954, it was not the structure that had been contemplated in the summer of 1953 when plaintiff's lien attached, but it was an altogether different building.

"The very foundation of the lien given to the mechanic or materialman is, that he trusts the building. What building? That building which is then in the course of erection upon a certain plan, and with a certain design. * * * The true question then, is, was the whole establishment erected on substantially one plan and design from the commencement, or was the plan or design so materially changed during the progress of the work as to make the whole a different building from that which was or would have been erected had no such change taken place? I use this language cautiously, to exclude the idea that any project of subsequent alteration, whether vague or certain, whether entertained at the commencement, or suggested during the progress of the building, and not embodied in the actual plan upon which it was commenced and carried on, could make any difference. If the change, whenever conceived or put in operation, involved the whole design and character of the structure; if the whole, when finished, was substantially a different building from the one which was at first commenced, then the existence of such a design ought not injuriously to affect the liens of the mechanics and others who trusted to the building according to the original plan." *Norris's Appeal,* 30 Pa 122, 125.

To same effect, see *Dickason Goodman Lbr. Co.* v. *Foresman,* 120 Okla 168 (251 P 70).

Under the circumstances, we hold that the liens were not simultaneous, that part Fourth of the above section of the statute applies, and that, accordingly, the liens of defendant and of Sievers are subject to that of plaintiff.

The mentioned mortgages having been given and recorded subsequent to the date plaintiff commenced work under its contract, plaintiff's lien takes precedence over them, also. *Stephens Lumber Co.* v. *Townsend-Stark Corp.,* 228 Mich 182.

The appeal as presented to us does not call for determination of priorities between the other liens or mortgages which are subsequent and subject to plaintiff's lien.

Decree below reversed as to plaintiff Strom. A decree may enter here conformable with this opinion, granting priority to the lien of plaintiff, with costs to it.

CARR, KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.