287 B.R. 676 (2001)
In re Michael BROWN.
B & D Drywall Supply, Inc., et al., Appellants,
v.
Eyde Construction Co., Appellee.
Civ. A. No. 00-CV-73212-DT, Bankruptcy No. 99-31178, Adversary No. 99-3133.
United States District Court, E.D. Michigan, Southern Division.
February 12, 2001.
*677 Robert E. McCarthy, East Lansing, MI, for Michael P. Brown.
Karen E. Evangelista, Troy, MI, Michael J. Sugameli, Sugameli & Olson, Troy, MI, for Appellants.

ORDER AFFIRMING BANKRUPTCY COURT'S JULY 12, 2000, ORDER AND DISMISSING APPEAL
WOODS, District Judge.
This matter having come before the Court on Appellants' appeal of the Bankruptcy Court's July 12, 2000, Order granting summary judgment in favor of Eyde Construction Company [Doc. No. 1];
The Court having reviewed the pleadings submitted herein, and being otherwise fully informed in the matter;
IT IS HEREBY ORDERED that the Bankruptcy Court's July 12, 2000, Order granting Eyde Construction Company's motion for summary judgment shall be, and hereby is, AFFIRMED, and thus Appellants' appeal is DISMISSED.
I. BACKGROUND
Appellants, B & D Drywall Supply, Inc.; Lansing Drywall Supply, Inc.; and William Johns ("Appellants"), appeal from the Bankruptcy Court's July 12, 2000, Order granting summary judgment in favor of Eyde Construction Company ("Eyde"). The underlying matter arose from the Chapter 13 proceeding instituted by Debtor Michael Brown ("Debtor") on or about June 2, 1999. The Court sets forth the following factual background, derived solely from the record before the Bankruptcy Court.
In the Debtor's Chapter 13 proceeding, Eyde filed a claim based on a January 27, 1995, land contract it entered into with Debtor.[1] The land contract was not recorded until July 10, 1998. As the record reflects, on November 2, 1999, Appellants filed an adversary proceeding to determine the validity, priority and extent of the liens *678 asserted by Appellants, the IRS and Eyde Construction.
It is undisputed that in 1991, Debtor, Appellant Johns, Dennis Reilly and Richard Brown formed Lansing Drywall Supply, Inc. ("Lansing Drywall"). Debtor served as president and treasurer of Lansing Drywall. The parties agree that in 1977, Eyde became the fee simple owner of property in Shaftsburg, Michigan, that ultimately was subdivided into lots and named "Hidden Lakes Estates." See April 1, 1977, warranty deed.[2] Subsequently, on January 27, 1995, Debtor and his wife signed a land contract for the purchase of lot 12 of Hidden Lakes Estates (hereinafter "Debtor's residence" or "Shaftsburg property"). Eyde recorded the land contract with the Shiawassee County Register of Deeds on July 10, 1998.
The record reflects that Debtor began construction on the Shaftsburg property on September 30, 1994. See Tr. at 19-20.[3] It appears that Debtor continued constructing his personal residence through 1995. The parties do not dispute that Debtor used Lansing Drywall's materials and supplies in trade without compensating Lansing Drywall and "without the knowledge or approval of Mr. Johns." Appellants' Br. at 3. It is further undisputed that Lansing Drywall was not compensated for any of the materials and supplies. Id. at 4. Appellants concede that they did not learn of Debtor's actions until late 1995 or early 1996, and immediately filed a notice of claim under the Marketable Record Title Act on January 2, 1996.[4] Appellants subsequently filed a notice of lis pendens on January 30, 1996.
Eyde filed a motion to dismiss and/or for summary judgment asserting that its land contract for the Shaftsburg property took priority because Appellants did not possess a construction lien under the Michigan Construction Lien Act. Appellants alleged that they possessed a lien under the Michigan Construction Lien Act and contended that their lien took priority over those asserted by the IRS and Eyde. Appellants alternatively argued that they had an equitable lien that took priority over the other parties' liens.
On June 14, 2000, after having the benefit of a full briefing by the parties, the Bankruptcy Court conducted a hearing on the IRS' and Eyde's motions to dismiss and/or for summary judgment. At the hearing, the Bankruptcy Court granted both the IRS' and Eyde's motion for summary judgment.[5] The Bankruptcy Judge found that summary judgment was appropriate because Appellant could not invoke the Construction Lien Act because there was no evidence establishing that a contractual relationship existed and thus the Construction Lien Act was inapplicable. See generally, Tr. at 37-46. A written Order memorializing the ruling, as it related *679 to Eyde, was entered on July 12, 2000.[6]
This appeal ensued on July 19, 2000. Appellants contend that the Bankruptcy Court erred by holding that Appellants did not possess a lien under the Michigan Construction Lien Act. Appellants further argue that the Bankruptcy Court erred by not granting an equitable lien in favor of Appellants. Appellants contend that they possess a lien that takes precedence over Eyde's land contract.
II. STANDARD OF REVIEW
This Court reviews a bankruptcy court's conclusions of law de novo and its findings of fact for clear error. See In re Holland, 151 F.3d 547, 548 (6th Cir.1998); Bankruptcy Rule 8013 ("[the bankruptcy court's] findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"). A grant of summary judgment is reviewed de novo. See In re Structurlite Plastics Corp., 224 B.R. 27, 29 (6th Cir. BAP 1998).
In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056. By its express terms, Rule 7056 incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure. See Bankr.R. 7056; see also In re Structurlite, 224 B.R. at 29-30. It is apodictic that summary judgment should be granted only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c). As the In re Structurlite court succinctly stated:
A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving part may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although [the court] must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."
Id. at 30.
III. DISCUSSION
District Courts have jurisdiction to hear appeals from final judgments, orders and decrees, and, with leave of the court, from interlocutory orders and decrees of bankruptcy judges. See 28 U.S.C. § 158(a). At issue in the present appeal is the Bankruptcy Court's June 15, 2000, Order granting summary judgment in favor of the Internal Revenue Service. The Bankruptcy Court's Order granting summary judgment in favor of the IRS is final and appealable under 28 U.S.C. § 158(a)(1). See, e.g., In re Structurlite, 224 B.R. at 29.
A. Michigan Construction Lien Act
Appellants first contend that the Bankruptcy Court erred in ruling that Appellant did not hold a construction lien pursuant to the Michigan Construction Lien Act ("Lien Act"), *680 Mich. Comp. Laws § 570.1101 et. seq. Appellants raised this argument in their earlier appeal of the Bankruptcy Court's grant of summary judgment in favor of the IRS. The Court rejects this argument for the same reasons expressed in this Court's Order Affirming the Bankruptcy Court's June 15, 2000, Order granting summary judgment to the IRS. See Order at 7-9. Appellant presents no new arguments or facts to persuade this Court to alter its earlier ruling.
Although courts construe the Lien Act liberally, see M.D. Marinich, Inc. v. Michigan Nat. Bank, 193 Mich.App. 447, 457, 484 N.W.2d 738 (Mich.Ct.App.1992), it is axiomatic that certain minimum requirements must be met. The Lien Act unequivocally requires that a contract exist. The Lien Act provides that "[e]ach contractor, subcontractor, supplier, or laborer who provides an improvement to real property shall have a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property. . . ." Mich. Comp. Laws § 570.1107(1)(emphasis added). The statute also provides that "[the Act] shall not be construed to prevent a lien claimant from maintaining a separate action on a contract." Mich. Comp. Laws § 570.1302(2). The term "contract," under the Lien Act, is given a broad definition that extends to "a contract, of whatever nature, for the providing of improvements to real property, including any and all additions to, deletions from, and amendments to the contract." § 570.1103(4).[7] The term "improvement" as contemplated under the Lien Act means "the result of labor or material provided by a contractor . . . including, but not limited to . . . building, erecting, constructing . . . or installing or affixing a fixture or material, pursuant to a contract." § 570.1104(7)(emphasis added). Finally, the Lien Act clearly indicates that a party is not precluded from instituting an action on the underlying contract as well: "In connection with an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose." § 570.1117(5)(emphasis added).
The Bankruptcy Court ruled that the Lien Act did not apply in the instant case because Plaintiff failed to establish that a contract existed between Debtor and Appellants. See, e.g., Tr. at 44-47. Upon review of the record, the Court finds no error in the Bankruptcy Court's decision.[8] Appellants ignore the necessity of a contract and argue that they have otherwise substantially complied with the requirements set forth by the Lien Act. This *681 Court finds it unnecessary to address whether Appellants otherwise "substantially complied" with the Lien Act because Appellants fail to first establish the necessary predicate to invoke the Lien Act: A valid, enforceable contract.
Appellants voluntarily chose to submit no affidavits or other evidence to support its claim that a contract between Debtor and Appellants existed. It therefore made no factual allegation to support its claim: Fed.R.Civ.P. 56(e) provides that "when a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading . . . [the adverse party] must set forth specific facts showing that there is a genuine issue for trial."[9] Appellants now contend that evidence of a contract was discovered at Debtor's deposition, which was held ten days prior to the Bankruptcy Court hearing. Such information was available at the time the Bankruptcy Court held its hearing on the IRS' motion for summary judgment. A trial court is not required to speculate on which portion of the record the non-moving party relies. See United States v. WRW Corp., 986 F.2d 138, 143 (6th Cir.1993).[10] The non-moving party bears the burden of designating specific facts showing there is a genuine issue for trial. See Rule 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, the designated portions of the record must be presented with enough specificity that the court can readily identify the facts upon which a party relies. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989), cert. denied sub. nom., 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990).
The Court additionally notes that Appellants did not file or otherwise request a motion under Rule 56(f). In sum, Appellants had sufficient opportunity to respond and present evidence to the IRS' motion for summary judgment, both in writing and at the hearing. Appellants were obligated to come forward with evidence establishing that a genuine issue of material fact existed to preclude summary judgment. Appellants failed to do so. Upon review of the record, the Court agrees with the Bankruptcy Judge's finding that Appellant's failure to produce evidence establishing a contractual relationship renders the Construction Lien Act inapplicable. See Tr. at 38. Further, it is improper for Appellants to allude to evidence that was not presented to the bankruptcy judge (or to this Court).
This Court additionally notes that the proffer of this additional evidence would not alter the Court's ruling. At the June 14, 2000, hearing, Appellants' counsel indicated that he wanted to produce a record obtained at Debtor's deposition  "a secret agreement that [Debtor] had with  with Mr. Eyde in which Lansing Drywall was made a party  Lansing Drywall made a party to that particular contract and there was a continuation to  to supply goods to Mr. Eyde." Tr. at 47 (emphasis added). As Appellant's counsel concedes, the "agreement" was secret and executed *682 between Debtor and Eyde. It is axiomatic that a party cannot consent to terms of which it is unaware, and it is beyond cavil that a contract cannot be formed in the absence of a mutual assent, obligation, or adequate consideration. Under Michigan law, a valid contract is not formed without the following essential elements: (1) parties competent to contract; (2) a proper subject matter; (3) a legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. See Thomas v. Leja, 187 Mich.App. 418, 422, 468 N.W.2d 58 (1991)(citing Detroit Trust Co. v. Struggles, 289 Mich. 595, 599, 286 N.W. 844 (1939)).[11] "Mere discussions and negotiations cannot be a substitute for the formal requirements of a contract." Id. (citing Kirchhoff v. Morris, 282 Mich. 90, 95, 275 N.W. 778 (1937)). In the instant case, by Appellants' own admission, it is clear that there is the absence of any discussions: Appellants repeatedly assert in their pleadings and at oral argument that they were unaware of Debtor's secret activities. This belies their current efforts to prove the existence of a contract. In sum, Appellants' reliance on a secret agreement made by other parties is not sufficient to establish that a valid contract existed between Debtor and Appellants. Even if accepted as true, none of the statements offered by Appellants creates a contract between Debtor and Appellants under Michigan law.[12]
B. Equitable Lien under Michigan Common Law
Appellants also contend that the Bankruptcy Court erred by not granting Appellants an equitable lien. Appellants' assignment of error is without merit. Even if an equitable lien attached, such a lien would not take priority over Eyde's lien. Accordingly, this Court finds that the Bankruptcy Court did not err when it ruled that Eyde's lien was not subordinate to Appellants' claim.
The Court notes that notwithstanding the existence of a legal remedy, Michigan law provides that an equitable remedy may be imposed in a construction dispute when "a breach of a fiduciary or confidential relationship, misrepresentation, concealment, mistake, undue influence, duress or fraud [exists]." Reed & Noyce, Inc. v. Municipal Contractors, Inc., 106 Mich.App. 113, 120, 308 N.W.2d 445 (1981). Even assuming that Appellants are entitled to an equitable lien on Debtor's house, Appellants still lose in a priority contest with Eyde.
In Michigan, interests in real property are recorded with the register of deeds in the county where the property is located. All recorded liens, rights and interests *683 in property take priority over subsequent owners and encumbrances. See Mich. Comp. Laws § 565.25. If an individual fails to record a lien or interest in property, that interest is void against any subsequent interest holder who purchased the interest in good faith for valuable consideration. See Mich. Comp. Laws § 565.29. A person takes in "good faith" if he or she takes without notice of the prior unrecorded interest. See Michigan Nat'l Bank & Trust Co. v. Morren, 194 Mich.App. 407, 410, 487 N.W.2d 784 (1992). Thus, Michigan has adopted what is frequently known as a "race-notice" statute: The first interest holder to record takes priority, unless that individual has notice of a prior unrecorded interest.
In the instant case, it is undisputed that Eyde recorded a warranty deed for the property at issue on April 11, 1977, in the Office of the Register of Deeds for Shiawassee County, Michigan. As such, Eyde established priority under Michigan's Race-Notice statute, § 565.29. Eyde subsequently executed a land contract with Debtor and his wife on January 27, 1995. Under the land contract, Eyde, as the vendor, retained title to the property until Debtor, the vendee, paid the entire purchase price. It is undisputed that Debtor did not pay the remaining balance on the land contract.
Under Michigan law, a vendee under a land contract takes equitable title to the land, while the vendor holds legal title and an equitable lien on the land in the amount of the unpaid purchase price. See, e.g., Barker v. Klingler, 302 Mich. 282, 288, 4 N.W.2d 596 (1942). Here, Eyde's vendor's lien would take priority over any equitable lien that Appellants may be entitled to assert.
The equities in this case favor Appellants over Debtor. The record reflects that Eyde and Appellants alike were victims of Debtor's dishonesty.[13] As between Appellants and Eyde, Appellants fail to cite any controlling authority that would render Eyde's vendor lien junior to Appellants' interest in the property.
IV. CONCLUSION
For the reasons set forth above, this Court AFFIRMS the Bankruptcy Court's July 12, 2000, Order granting summary judgment in favor of Eyde Construction Company; and thus this appeal is DISMISSED.
IT IS SO ORDERED.
NOTES
[1] The IRS also filed a claim based on two tax liens: (1) a lien recorded on October 5, 1995, for $16,509.68 (for the 1994 tax year); and (2) a lien recorded on January 11, 1996, for $51,257.04 (for the 1991-93 tax years). The priority of the IRS tax liens, vis-à-vis Appellant's claims in Debtor's property, was addressed by a previous Order of this Court.
[2] Specifically, in 1994, Eyde platted the property and thus established "Hidden Lakes Estates."
[3] Upon review of the record, it is unclear how or why Debtor began construction on the Shaftburg property before signing a land contract for the property. The Court finds it unnecessary to clarify this issue because it has no relevance to the issues raised on appeal and would not alter the disposition rendered by this Court.
[4] Although Eyde contends that Appellants were aware of Debtor's actions in 1992, two years before Debtor began construction on the Shaftsburg property, Eyde does not provide record support for this claim.
[5] As noted earlier, the Court previously affirmed the Bankruptcy Court's June 15, 2000, Order granting summary judgment in favor of the IRS.
[6] The Order granting summary judgment in favor of the IRS was filed on June 15, 2000.
[7] Recovery under the Lien Act is predicated on the existence of a contract: As Michigan courts have expressed, "[t]he proper amount of a lien is the lien claimant's contract price less payments made on that contract to the lien claimant." Erb Lumber, Inc. v. Gidley, 234 Mich.App. 387, 396, 594 N.W.2d 81 (1999)(emphasis added).
[8] The Court additionally rejects Appellants' summary contention that the Bankruptcy Court ruled that a written contract was required under the Lien Act. Appellants failed to cite to the portion of the record in which the Bankruptcy Court purportedly made such a finding. Upon this Court's review of the record, the Court finds that Appellants' claim is unsubstantiated. Although the Bankruptcy Court ruled that a contract must exist, the Bankruptcy Court did not rule that it must be written. See, e.g., Tr. at 32 (noting that contract does not have to be in writing, but must be expressed); 34 (a lien under the Lien Act exists only if it is based on a contract); 38-40 (based on statutory provisions, a contract must exist to assert a construction lien); 45 (finding plaintiffs failed to offer evidence of the requisite contractual relationship or compliance with Section 1111(1)). As the above citations reflect, the Bankruptcy Court ruled that Appellants failed to provide evidence that a written or oral contract existed. Id. at 45-46.
[9] Rule 56(e) provides, in full: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
[10] Neither does it have a duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 404 (6th Cir.1992) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir.1989)).
[11] An offer, which is needed for mutuality of agreement, is defined as "`the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Eerdmans v. Maki, 226 Mich.App. 360, 364, 573 N.W.2d 329 (1997)(quoting Restatement (Second) of Contracts § 24). Clearly, Debtor did not make an offer to Appellants: Debtor instead wrongfully appropriated materials belonging to Appellants without Appellants knowledge or consent. See, e.g., Appellants' Br. at 3 (asserting that Debtor used materials and supplies "without the knowledge or consent of William Johns or Mr. Reilly. . . . Lansing never received compensation for any of the stolen materials and supplies."); Appellants' Br. at 5 ("Appellant physically improved the Debtor's property (albeit without Appellant's [sic] knowledge")).
[12] The Court additionally notes that because Appellants did not possess a construction lien under the Lien Act, for purposes of establishing priority, it is immaterial when the first actual improvement to the property was made.
[13] There is no record support for Appellants' conclusory assertion that they suspected that Mr. Eyde joined in, or was aware of, Debtor's misappropriation of Appellants' materials and supplies.